UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3135-BO

| | | |
|---|---|---|
| STANLEY EARL CORBETT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| G.J. BRANKER, et al., | ) | |
| Defendants. | ) | |

On July 26, 2010, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. On May 4, 2011, defendants G.J. Branker, Officer Hicks, Officer Holloman, Officer James, Officer Lancaster, and Sergeant Prado filed a motion for summary judgment. (D.E. # 21).[1] Corbett responded, including a motion to compel discovery, and the matter is ripe for determination.

---

[1] On November 18, 2010, summons was returned unexecuted as to Sergeant Reed. (D.E. # 11) Plaintiff was given notice of the failure to serve. (D.E. # 15). On August 5, 2011, the court entered an order directing the North Carolina Attorney General to provide the full name and last known address of Sergeant Reed to aid in proper service. (D.E. # 29) The AG's office provided the response under seal, as allowed by the instructing order, and the summons was reissued on August 17, 2011. Service was attempted by certified mail. (D.E. # 30) On September 27, 2011, the summons was returned unexecuted. (D.E. # 33)

The USMS must engage in a "reasonable effort" to effect service on defendant Reed. See, e.g., Greene v. Holloway, 210 F.3d 361, 2000 WL 296314, at *1 (4th Cir. 2000) (unpublished table opinion). A "reasonable effort" includes attempting to serve a defendant personally. See, e.g., Simmons v. Stokes, No. 8:11-cv-00175–RMG–JDA, 2011 WL 2198298 at *2 (D.S.C. May 11, 2011) (unpublished), report and recommendation adopted, 2011 WL 2293227 (D.S.C. June 6, 2011) (unpublished); Dempsey v. Elmore, No. CV407-141, 2010 WL 2195684, at *1 (S.D. Ga. Apr. 7, 2010) (unpublished). Although some courts appear to require the plaintiff to specifically request personal service, "[t]hese cases . . . rely on an earlier version of Rule 4(c), which indicated that such a request was necessary. The current version of Rule 4 does not indicate that a request is necessary." Olsen, 333 F.3d at 1205 n.4 (collecting cases). Therefore, the court DIRECTS the USMS to attempt to effect personal service on defendant Reed at the address provided under seal.

i.  Issues

The issues before the court involves a use of force incident against plaintiff in violation of the Eighth Amendment on December 19, 2008, and an associated retaliation claim therefrom.

ii. Discussion

   a.  Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

2

b. Factual Outline

On December 19, 2008, plaintiff alleges that at 7:57 a.m., plaintiff was handcuffed and escorted to the shower by defendant Lancaster. After about three minutes, defendant Lancaster allegedly returned to the shower and told plaintiff to get out. Plaintiff alleges that he was covered with soap. Plaintiff further alleges that he asked if he could rinse the soap off of his body to which defendant Lancaster responded, "get out of the shower before I spray your ass."

Plaintiff decided it best to comply and began to dry his face, when defendant Lancaster allegedly "sprayed his penis and his face." Defendant Lancaster states that the canister malfunctioned and the spray struck plaintiff's "lower torso." Plaintiff further alleges that, when he questioned defendant Lancaster why she sprayed him, that she accused him of spitting in her face. He further alleges that defendant Lancaster sprayed him because he would not get out of the shower and because he was speaking inappropriately to her.

Plaintiff alleges that defendant Lancaster called defendants Reed, Prado, and Hicks to the block. He alleges defendant Holloman placed him in handcuffs, opened the shower door, and bent Plaintiff's wrists while defendant took him to a mop closet, putting a "gash" on plaintiff's right wrist. Plaintiff further alleges that defendants Reed, Prado, and Hicks followed plaintiff and Holloman to the closet where defendants beat him. Plaintiff alleges that the mop closet is where one is to be decontaminated, but that did not occur, nor was there any reason to take him to the closet given he was in the shower when the incident occurred. Plaintiff further alleges that he was then placed in full restraints and placed in the "desert" holding cell.

At 9:00 p.m. that evening, Officer Allen and defendant Hicks allegedly took plaintiff to medical and then returned to the "desert" cell. Plaintiff asserts that at 11:40 pm, defendant James

3

came to his cell and told him that Lieutenant Claybourne wanted to speak to him. Plaintiff alleges that while he was walking down the hall going towards lower B Block, plaintiff noticed the second door on the left open. He further alleges that defendant James pushed plaintiff into a dark room, which plaintiff believes to be a storage room. Plaintiff states that defendant Lancaster was standing in the middle of the room with her fists "balled." Plaintiff claims that defendant James and Lancaster beat plaintiff and squeezed his groin for eight to nine minutes.

Plaintiff asserts that defendant James threatened to kill him if he said anything. Likewise, plaintiff was charged with disciplinary infractions to cover up the assault. Plaintiff asserts that he received several injuries as a result of the December 19th incident which include: a gash on his right wrist, headaches, lower back pain, a big knot on the lower left side of his back, pain on his left shoulder and numbness in his fingers, thumbs, and wrists. Plaintiff further asserts that he has been prescribed pain pills, including narcotics, and has received physical therapy. Plaintiff asserts that he remains emotionally distressed by the incident and is currently taking an anti-depressant.

    c.    Excessive Force

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of

4

excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

At this juncture from a review of the factual allegations, plaintiff has alleged that force was not used in good faith, but maliciously and sadistically. Plaintiff proffers as an exhibit, questions from the assistant warden concerning the propriety of the investigation into the sue of force incident. (D.E. # 28, Ex. A). Plaintiff also asserts that defendants have video surveillance tapes which support his allegations. (D.E. # 20, Production of Documents Request, Question # 6, Surveillance Camera footage from December 19, 2008; D.E. # 28, "The Defendants [sic] failed to dispute this incident with any evidence, because the movements are on camera, & providing the video footage would rove my claims more than I already have."; D.E. # 32, "Motion to Compel" seeking surveillance tapes from date in question and photos of areas in dispute, as well as surveillance tape policy. ) However, defendants do not address the request, do not refute existence of any surveillance tape, nor do they proffer any video surveillance tape.

5

The Fourth Circuit has held that "evidence that would . . . confirm[] (or dispell[]) . . . allegations pertaining to the events that form the subject of this lawsuit is highly probative of that issue." McMillian v. Wake County Sheriff's Dep't., 399 Fed App'x 824, 828-829 (4th Cir. 2010) (unpublished) (citing Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 196 (4th Cir.2006) ("Because there was a sufficient basis to believe such videos existed, and because this evidence represented [plaintiff's] principal opportunity to contradict the assertion that the district court found dispositive, the court should have allowed discovery as to the videos."). Therefore, in McMillian, the Fourth Circuit found it an abuse of discretion by the district court not to allow such a discovery request. This court, therefore, finds that it is not appropriate to grant summary judgment for defendants given the possibility of the evidence contained in these surveillance tapes.

For the above stated reasons, the motion for summary judgment (D.E. # 21) is DENIED to allow supplementation. Therefore, the motion to compel (D.E. # 32) is ALLOWED, in part, and DENIED, in part. The video tapes must be provided to the court by February 24, 2012. If affidavits are provided along with the tapes, those affidavits must be served on plaintiff. The video tapes may be submitted only to the court, and if after review the court finds it necessary to provide plaintiff with the copies, the court will order defendants to do so. Defendants are to provide plaintiff with a copy of the prison's surveillance policy. Defendants will be given until March 2, 2012, to file any additional motions they deem appropriate, and plaintiff shall have until March 26, 2012 to file his response. Furthermore, as discussed in Footnote 1, the court DIRECTS the USMS to attempt to effect personal service on defendant Reed at the address provided under seal. If the USMS is unable to locate and serve defendant Reed by March 2,

6

2012, Reed shall be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) from the suit.

SO ORDERED, this the 14 day of February 2012.

TERRENCE W. BOYLE
United States District Judge